Ruffin, Chief Justice.
 

 The plaintiff seeks to set up the deed of the 10th of April, 1827, and also to have her dower in the real estate of her husband, and her distributive share in his personal estate, according to the trusts of the deeds of the 20th day of November, 1828. The defendants resist the first claim, upon the grounds' stated in the answers. But they submit to the second, and state that they have always been willing to account with the plaintiff, upon the footing of the latter deed, as it was originally drawn, or as it was modified and left by the husband at the time of his death. Accordingly, dower has been allotted to the plaintiff by an interlocutory decree in this cause, without resistance on the part of the defendants. The only dispute therefore, really existing between the parties, is upon the validity of the deed of the 10th of April, 1827.
 

 
 *62
 
 Whether a gfftfrom a husband to wUl'be* aided in
 
 Quceref'
 

 Butcer-tamly it will not be, unless she shows merits, and aelearin-thehusby band to tlUeaud*8 hold for her benefit.
 

 That is a deed purporting to convey several slaves presently; from her husband to the plaintiff absolutely. It is insisted, that such a deed is valid in this Court as a complete disposition, not subject to the husband’s revocation ; and the Court is bound to protect the separate interests of the wife under it, as absolute rights, in the same manner and upon the same principle, that the rights of any other
 
 cestui qui trust,
 
 are enforced against a trustee.
 

 The Court does not entertain that opinion. In England has ^een cei'tainly held, that a gift from the husband to the wife without the intervention of a trustee, may be made, under such circumstances as to render it valid in equity, and induce that Court to constitute the husband h'mseif the trustee. No case of that
 
 sort
 
 has occurred in this state; and perhaps the Court might not feel the obligation to encourage the obtaining such donations, or the creation of separate interests in the wife, subject to hen immediate and absolute control during the marriage, by an act between the husband and wife themselves, which is inoperative at law. But it is not necessary, nor do we mean to deny the proposition in this case. If the Court would in any case support such a transaction, we think the circumstances before us, are insufficient to raise any equity for the plaintiff.
 

 As the contract is void at law, the case in this Court must always be that of an application to aid a defective
 
 m, -r
 
 , , . , conveyance. I he wite cannot have that assistance unless she shows herself to be meritorious; and shows further a . . clear intention, that what was done should have the effect divesting the interest of the husband, and of creating a separate estate for her, which she should have the immediate power to dispose of as she chose; and that the estate thus intended for her, was but a reasonable provision, Hence, although the doctrine that equity will recognise such transactions under circumstances, is laid down in the books, there are very few cases indeed, in which a gift by the wife to her husband, of her separate estate once well constituted, or a gift by the husband to the wife, have been made effectual. They almost all fail, either from the extravagance of the gift, or the insufficiency of the evi
 
 *63
 
 dence to establish the intents of an actual gift by what was done. It is plain, that a Court of equity, cannot by way of aiding a defective conveyance, carry it further than the parties intended it should operate, although its terms may be broader. In
 
 Walter
 
 v.
 
 Hodge, 2
 
 Swans. 97, the wife set up a parol gift of six hundred pounds in bank notes by her husband in his last illness, accompanied with actual delivery. .It was insisted, that it was good either as a
 
 donatio causa mortis,
 
 or to her separate use. The case failed in the first aspect. As to the other, Sir Thomas Plumer said, there was great difficulty in establishing such a transaction, whereby the husband parts from his property in his lifetime, and puts it under the immediate control, and to the separate use of the wife. He calls it a suspicious case, and says, the Court requires satisfactory evidence of an act constituting a transfer of the property, and a sufficient transmutation of the possession. There was none such there; because the possession of the wife, was that of her husband. He ruled against the wife, because her answer stated the gift to be absolute and immediate, and her only witness proved it to be conditional and postponed to the husband’s death. In
 
 M‘Lean
 
 v.
 
 Longlands, 5
 
 Ves. 1, Lord Alvanly said, that nothing less would do than some clear and distinct act of the husband, by which he divests himself of his property, and engages to hold as trustee for the separate use of the wife. Declarations of an intention, or of a disposition of property to the use of his family, if admitted, would be a sort of evidence, and upon a principle that would have a most extensive effect. Suppose, said the Court, that the husband had given to Callender, (who had the funds in his hands) distinct directions to pay to her and her separate use: does that vest it in her? Could she in this Court compel execution of such a trust ? The Court refused an issue to try the fact of the gift. In such cases as the gifts of trinkets, or the borrowing by the"husband of the wife’s savings of her pin money, the transactions are supported on the manifest intent. So, in what Sir Thomas Plumer calls “the single case,”of an actual transfer in the stock books of one thousand pounds South Sea annuities, by the
 
 *64
 
 husband to the wife, and in her name, the Court thought that so decisive an act, as amounted to an agreement by ^le hus^anc^’ that the property should become hers. It could not be mistaken. It was a clear and distinct act which he thought operated immediately, which he plainly intended should so operate, and divest him of the property. The two first cases, it is true, were transactions by parol; and in that respect, differ from that before the Court. But they are cited for the reasoning; and to show how reluctant the Court is, to extend this extraordinary assistance to any cases, where there is the shadow of a doubt of the intention ; or where it cannot be seen that the parties had done all that was intended to be done; and that they believed that sufficient had been done
 
 to
 
 effectuate their purpose, to change the character of the husband’s interest immediately. Such dealings are suspicious. It is not easy to admit into the mind, the belief of such an intention on the part of the husband, freely, actually and immediately to part from the property, and to vest it in the W’ife, she living with him, and comfortably provided for by him, and both contemplating that will continue to be the case. Why should he thus convey slaves to her, under those circumstances? It cannot be supposed in this case, that it was with a view of separating them from his own, and letting the profits accumulate for her. Nothing of the sort was in fact done. No such intention is stated in the bill; nor any reason given, for every thing’s remaining after the deed as it was before. It is not pretended, that the plaintiff set up any right to the slaves in her husband’s lifetime, nor indeed until long after his death, when the trustee had sold them for the purposes of division. The deed has this effect; it proves what was then in the husband’s mind; that is, that he thought of providing for his wife, and how far he would go, if he did it at all. If there had been a change of the possession of the slaves; if the plaintiff had exercised, or asserted any dominion over them; if the husband had even acknowledged her authority to do so, there might be something to show that he intended to divest himself of the property, and thought he had done so. If even there were clear evidence of the
 
 *65
 
 delivery of the deed to the plaintiff, or any person for her, there might be room for a presumption, that the husband was parting from the property, though the possession and perception of the profits continued as before. It is said, that the execution of the deed, and the subsequent production of it by the wife, is sufficient evidence of its having been perfected by delivery. And that even if the maker of a deed retain the possession until his death, after a formal execution, which was intended as a delivery, that will make it effectual. The cases on that subject relate to deeds effectual at law. If a father make a deed to advance an infant child, and formally execute it, and put it away in his desk for safe keeping, that will be his deed. It can operate at law between the parties, and there is a presumption from the nature of the transaction that it was intended it should. But the rule is otherwise between husband and wife. The deed from one to the other cannot operate; and there is no presumption that he means to give her a separate estate during his life. A father may wish to advance a child before marriage ; but a husband seldom wishes to put his wife on an independent footing; he may perhaps do so, but it requires clear proof. The bare and formal signing and sealing _a deed-to her and having it attested, cannot, in such a case, be taken for a delivery, or as having been intended for one. There must be proof of some further act; delivery in fact, or the production of a deed by the wife, with evidence at least, of such acts on her part in relation to the property, in his lifetime, as would induce the belief that she had the deed in his lifetime, and by hfe consent; this is the more necessary, as the intimate relation between the parties, and her means of access to his papers, afford opportunities to her, to possess herself of the instrument without his consent or knowledge! The ordinary presumptions therefore, do not reach such a case. But here the circumstances are very strong to rebut them, if they did. The deed was executed in April, 1827, and witnessed by Gedney, without any thing passing between the parties but the bare signature and attestation. The plaintiff-was not present, and the husband did not state the nature of the paper, but
 
 *66
 
 Iiept it himself. The bill charges, that he had frequently declared his intention to make such a deed, and that he executed it in the presence of two witnesses. The bill states the case, as if the deed had been attested by both witnesses at once, and immediately delivered to the plaintiff. The latter fact is not directly averred ; nor indeed is any delivery charged, except as implied in stating the execution of the deed. The bill is silent upon the delivery and possession of the deed or slaves. Sometime afterwards the husband, at some distance from home, produced the deed, and requested Mr. M'Intire to attest it, and he did so. He stated to the witness, that he always intended to do something for his wife, but did not wish his family to know it until after his death, and therefore desired him to keep it secret. The husband took the deed again. Nothing more is heard of it until July, 1832, when it was proved and registered; though the husband died in March, 1831, and the defendant James T. Elliott as his administrator and trustee, soon afterwards sold the estate, including the negroes conveyed in this deed, and the plaintiff was present at the sale and made no objection, but purchased two •of them. It might be possible, that she thought the deed ineffectual, and4 therefore did not assert a right under it. But why should she think so ? Would she not have taken advice on it ? Nothing of that sort is proved; nor does any witness prove its intermediate existence.
 

 
 *65
 
 The pre-sumptionof a delivery which arises from theexecution and attestation of a deed valid at law, does not take place as to one by a husband to his wife; there must be proof of a delivery in fact, or of acts or declarations of the parties, from which it may be inferred.
 

 
 *66
 
 It is clear, however’, from Mr. MTntire’s testimony, that the husband did not intend the deed to operate immediately. He did not intend the possession to change, but did intend everything to remain as it was until his death. Upon the deposition of this witness of the plaintiff, an immediate delivery of the instrument, which upon its face is to have an immediate operation, cannot be presumed, but such a presumption is disproved. That there was an actual delivery, the plaintiff ought to furnish clear evidence. She does not; but her depositions and the circumstances show, that a delivery was not intended, when the husband last spoke of the instrument, and that it was not made. Besides those already adduced, it is clear, that
 
 *67
 
 the parties united themselves, unfortunately, from motives of the most interested kind on her part, and that they lived unhappily together. Just two months after the deed is dated, and probably a few days after M‘Intire’s attestation, the plaintiff left, and her husband advertised her. If she had then been in possession of the deed, is it not probable she would have shown it to some person
 
 1
 
 After that period, there seems to have been little probability of his executing any kind intentions to her. On the contrary, she frequently left him after violent altercations, and carried off bed linen and other moveables; and, as charged by him, opened his desk and plundered him of money. In November, 1828, he executed the deed of trust, by which he conveyed all his estate, including the slaves mentioned in the deed to the wife, and making therein for her just the provision to which she was legally entitled. It is said however, that the interlineation subsequently made, whereby those slaves and two others, were assigned to the wife as her share, shows that the donor either considered or meant the deed of April, 1826,
 
 to
 
 be obligatory. That does not seem to be a just inference.' All that can be inferred is, that he wished her share to consist of those particular slaves; for certainly he did not intend that she should hold them under the one deed, and to take one equal share with his children of his other property, under the other. But it is certain that the provisions of the last deed are altogether inconsistent with the first, as now set up. Under the deed of April, the wife takes an immediate separate estate. That of November, subjects those negroes in common with the other estate, to the payment of the debts ; and the use for life in' the whole is reserved to the husband. These provisions show, that whatever else he may have intended by the interlineation, he could not intend thereby to confirm the first deed which conveys an immediate estate.
 

 In a case therefore, where the Court expects satisfactory and clear evidence, that the deed was delivered, and that her husband meant to make thereby such a separate provision for her as the deed purports to create, that is immediate, and to make himself her trustee, instead of being
 
 *68
 
 the beneficial owner; the plaintiff, has not only not supplied the proof, but the evidence tends the other way toes*;ablish that he did not intend to part from the property y that the paper was merely deliberative; and that it never was delivered, but obtained at sometime surreptitiously by the plaintiff and kept concealed by her.
 

 If the plaintiff had proved such a case as has been supposed, other difficulties of a very serious kind would be presented to her relief. A wife must have merits to make the Court active in her behalf. She is not like a purchaser for value. She must yield to creditors, and only stands before other volunteers ; and not before them, unless her conduct entitles her to the bounty of her husband. The aid of the Court is discretionary, under all the circumstances. In
 
 Stoit
 
 v.
 
 Ayloff,
 
 1 Ch. Rep. 60, the plaintiff filed her bill on a promise of the husband, to settle one hundred pounds on her; but she had separated from her husband, and the bill was brought sixteen years after the promise, and was dismissed. In
 
 Beard
 
 v.
 
 Beard,
 
 3 Atk. 72, the husband gave
 
 by deed,
 
 all his substance to his wife; Lord Hardwicke refused relief, because the law will not permit a man to convey to his wife, and equity will not suffer the wife to have the husband’s estate while he is living, because it is not in the nature of a provision, which is all she is entitled to. In England, the wife is dependent upon the husband’s good will for a
 
 provision,
 
 unless secured by contract. Here the law secures it to her, against his will.
 

 But the clear ground is, that there is a defect of evidence of the actual intent, in respect of the deed and of its delivery by the husband. For that reason the bill must be dismissed, as far as it seeks relief upon the footing of the deed of April 10th, 1826.
 

 Thé plaintiff is entitled to an account under the deed of November 20th, 1828, and the subsequent memorandum dated April 20th, 1829.. It might be a question, were it not for the latter memorandum, whether the interlineation of the words “ all to be to my wife,” in the schedule, after the execution of the deed, could control the provisions of the deed itself. Being a voluntary conveyance and settle
 
 *69
 
 ment on the family of the donor, and kept for the donor by his friend, subject to his order, and never delivered to the trustee until all the alterations had been made, perhaps it might be considered unfinished until then. But it is unnecessary to discuss the question, because, if the donor was at liberty to make the first. alteration, he could also make the second; and the last reinstates the provisions of the body of the instrument, adding only other property.
 

 Pee Cueiam. Decree accordingly.